United States District Court
Southern District of Texas
**ENTERED**
April 01, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAYMOND LOUIS EISENBACH, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-18-1417 |
| | § | |
| LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION, | § § § § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND RECOMMENDATION GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 11) against Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered the motion, the absence of a response, the claims raised by Petitioner in his § 2254 Application, the state court records, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 11) be GRANTED, and that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED and DISMISSED WITH PREJUDICE.

**I.     Introduction and Procedural History**

Raymond Louis Eisenbach ("Eisenbach") is currently incarcerated in Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), as a result of a 2015 felony conviction for possession of a controlled substance in the 338th District Court of Harris County,

Texas, cause no. 141669101010, for which he was sentenced to twelve (12) years imprisonment. Eisenbach was charged by indictment with that offense on March 28, 2014, found guilty by a jury on February 24, 2015, and was sentenced, based on his plea of true to the prior convictions alleged in the indictment for enhancement purposes, to twelve years incarceration. Eisenbach appealed his conviction to Texas' Fourteenth Court of Appeals, which affirmed the conviction in an unpublished opinion on August 30, 2016. Eisenbach's petition for discretionary review was thereafter refused by the Texas Court of Criminal Appeals on January 25, 2017.

On May 17, 2017, Eisenbach filed a state application for writ of habeas corpus. That application was denied by the Texas Court of Criminal Appeals on August 9, 2017, on the findings of the state trial court without a hearing. This § 2254 proceeding, filed on or about May 3, 2018, followed.

Respondent has filed a Motion for Summary Judgment, arguing that no relief is available on any of Eisenbach's claims. As of this date, no response in opposition has been filed.[1]

## II.     Factual and Evidentiary Background

The factual and evidentiary background, as set forth by Texas' Fourteenth Court of Appeals

---

[1] In an Order entered on February 1, 2019 (Document No. 16), Eisenbach was given additional time, until March 1, 2019, to file a response to Respondent's Motion for Summary Judgment. As of this date, he has not done so. His failure to file a response, independently, justifies dismissal of his claims. *See* Order of June 5, 2018 (Document No. 7) ("Whether the respondent elects to submit an answer or a dispositive motion (*i.e.*, a motion to dismiss or for summary judgment), the petitioner shall file any reply within **thirty (30) days** of the date reflected on the certificate of service. If the petitioner fails to comply on time, the Court may dismiss this case for want of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure."); *Martinez v. Johnson*, 104 F.3d 769, 772-773 (5th Cir.), *cert. denied*, 522 U.S. 875 (1997).

2

in affirming Eisenbach's conviction, is as follows:

> Sergeant Leon Hernandez and Deputy Robert Buentello of the Harris County Sheriff's Office were working an approved extra job at an apartment complex in a high-crime area of Houston, Texas. Their duties were to provide security and look for trespassers and car burglars. Around midnight on February 5, 2015, both officers were conducting a foot patrol of the apartment complex when they noticed a truck with the engine turned off and backed into a parking space; there were two occupants inside the truck. Hernandez had worked at the complex for the past five years and did not recognize either occupant and was unaware whether they were residents. Hernandez approached the vehicle on the passenger side, where the window was open, and asked the passenger if he lived on the premises. He said no and Hernandez asked for his name. The passenger gave his name, Louis, and Hernandez asked Louis if he could step out of the vehicle. Louis agreed and exited the vehicle. Hernandez then asked Louis if he had any narcotics on his person or inside the vehicle and Louis said he had a crack pipe. Hernandez asked Louis if he could retrieve it for him and he agreed. Louis reached in towards the middle console of the vehicle and produced a pipe.
>
> Meanwhile, Buentello was in front of the vehicle by the headlight. Buentello was watching the driver for officer safety while Hernandez spoke to the passenger. Buentello had worked at that complex for approximately three years and did not recognize either occupant of the vehicle as a resident. After Louis handed Hernandez the crack pipe, Hernandez motioned to Buentello, who went around the vehicle to the window on the driver's side. Buentello had the driver step out of his vehicle. As the driver opened his door, Buentello observed a syringe on the door handle with a cloudy-white liquid inside. When Buentello asked what it was, the driver, identified by Buentello as [Eisenbach], said, "meth." Buentello then detained [Eisenbach]. Buentello testified that he asked [Eisenbach] to step out of the vehicle after the crack pipe was given to Hernandez in order to ascertain whether any controlled substances were in the vehicle.
>
> * * *
>
> After [Eisenbach] was detained, Buentello searched him and found a shaving bag in the coat [Eisenbach] was wearing containing unused syringes, a rubber tourniquet, and several baggies that were later identified as containing methamphetamine. [Eisenbach] was subsequently arrested by Deputy Shawn Shandera, an on-duty officer called to the scene by Hernandez and Buentello.

*Eisenbach v. State*, No.14-15-00225-CR at 2-4.

### III. Claims

Eisenbach essentially raises two claims:

(1) that his Fourth Amendment rights were violated when (a) he was detained without reasonable suspicion; and (b) the state trial court denied his motion to suppress; and

(2) that his trial counsel was ineffective for: (a) failing to offer evidence, or call as a witness, Eisenbach's passenger at the time of his arrest, to show that the passenger lived at the apartment complex where the arrest took place and that Eisenbach, consequently, had a reason to be in that location; and (b) failing to subpoena the "booking records" which would have shown that he was not wearing a coat at the time of his booking, in order to challenge the officers' testimony that drugs were found in the coat he was wearing.

Respondent argues in the Motion for Summary Judgment that Eisenbach's Fourth Amendment claims are not cognizable in this § 2254 proceeding because he was given a full and fair opportunity to pursue them in state court, and that his ineffectiveness claims were properly rejected by the state courts on the merits and that no relief is available on those ineffectiveness claims under § 2254(d).

### IV. Standard of Review under § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited. 28 U.S.C. § 2254(d) provides:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "State-court decisions are measured against [the Supreme Court's] precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). Similarly, state court decisions are reviewed under § 2254(d) by reference to the facts that were before the state court at the time. *Id.* ("It would be strange to ask federal courts to analyze whether a state court adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

For factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the

5

evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, factual determinations made by state courts carry a presumption of correctness and federal courts on habeas review are bound by them unless there is clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd*, 541 U.S. 913 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 537 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). This is true regardless of whether the state court rejected the claims summarily, or with a reasoned analysis. *Cullen*, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary denial."). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 562 U.S. at 102.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted); *see also Price*, 538 U.S. at 641 ("'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'") (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004). A habeas petitioner can only overcome § 2254(d)'s bar "by showing that 'there was no reasonable basis'" for the state court's rejection of his claim(s). *Cullen*, 563 U.S. at 188 (quoting *Richter*, 562 U.S. at 98)).

V.   **Discussion**

A.   **Fourth Amendment Claim(s)**

Eisenbach first raises a Fourth Amendment claim, alleging the his right to be free of an unreasonable search and seizure was violated when he was detained without reasonable suspicion,

7

and when the state trial court denied his Fourth Amendment-based Motion to Suppress. In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *See also Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir.), *cert. denied*, 484 U.S. 933 (1987). The opportunity, regardless of whether it is acted upon at the state court level, is all that is required to preclude federal habeas review. *Smith v. Maggio*, 664 F.2d 109, 111 (5th Cir. 1981).

Here, the record shows that Eisenbach filed a Motion and an "Amended Motion to Suppress Illegal Detention Due to Lack of Reasonable Suspicion." Following voir dire, but prior to the jury being sworn, the state trial court held a hearing on Eisenbach's Motion/Amended Motion to Suppress. The motion was denied on the record, and Eisenbach argued, in one issue on appeal, that the trial court had abused its discretion in denying his motion to suppress. Texas' Fourteenth Court of Appeals rejected that argument and affirmed Eisenbach's conviction. Because the record shows that Eisenbach was afforded the opportunity, and took advantage of the opportunity, to litigate his Fourth Amendment claims in state court, Eisenbach's Fourth Amendment claim(s) are not, as set forth in *Stone*, cognizable in this § 2254 proceeding.

### B.     Ineffective Assistance of Counsel Claims

Eisenbach next alleges that his trial counsel was ineffective in two regards: (1) for failing to offer evidence about, or call as a witness, the passenger in his car at the time of his arrest; and (2) failing to subpoena and offer as evidence the booking records which would have revealed that he was not wearing a coat at the time of his arrest. Eisenbach argues that evidence about the passenger in his car was important because that passenger lived at the apartment complex where the arrest was

made, thereby explaining Eisenbach's presence at that location. As for the booking records, Eisenbach argues that with the booking records he could have disputed the officers' account that drugs were found in his "coat." These ineffectiveness claims were rejected by the state courts on the merits. For the reasons that follow, that adjudication was not contrary to, or based on an unreasonable application of, clearly established federal law.

The clearly established Federal Law applicable to claims of ineffective assistance of trial counsel is contained in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court determined that relief is available if a petitioner can show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Deficiency under *Strickland* is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors

9

were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378; *Cullen*, 131 S.Ct. at 1403 ("[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result") (quoting *Strickland*, 466 U.S. at 686)). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003).

When an ineffective assistance of counsel claim has been adjudicated on the merits by the state courts, federal habeas review is "doubly deferential," with the court taking a "highly deferential look at counsel's performance" under *Strickland*, and then imposing a second layer of deference under § 2254(d). *Cullen*, 131 S.Ct. at 1403. Under § 2254(d), therefore, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S.Ct. at 788. As for *Strickland's* prejudice

10

prong, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 131 S.Ct. at 791. Instead, the question is whether "fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents. *Id.* at 786. If "'fairminded jurists could disagree' on the correctness of the state court's decision," § 2254(d)(1) precludes relief. *Id.* at 786. In contrast, where there is no "possibility that fairminded jurists could disagree" and fairminded jurists would uniformly conclude that the state court's decision is contrary to, or based on an unreasonable application of clearly established Federal law, relief is available under § 2254(d)(1). *Id.*

Here, the state court determined that Eisenbach had failed to establish that the passenger in the car "was available to testify on his behalf, or would have offered beneficial testimony for the defense," and had also failed to show "how a record that would not list a coat, when he was photographed wearing one at the time of his arrest, would have materially affected his case." *Ex Parte Eisenbach*, Application No. WR-87,169-01, at 34. These findings implicate *Strickland's* deficiency prong and *Strickland's* prejudice prong.

With respect to Eisenbach's passenger, as found by the state trial court, there is no evidence that the passenger would have testified favorably for Eisenbach. Eisenbach was, therefore, unable to show in the state habeas proceeding that his counsel's failure to interview that passenger or call him as a witness for the defense, was "unreasonable," or that counsel's performance in that regard affected the outcome of the trial. As for whether counsel could have, or should have, offered evidence that the passenger lived at the apartment complex where Eisenbach was arrested, nothing in the record could support a conclusion that where the passenger lived had any bearing on the outcome. While it may be that the passenger lived at the apartment complex where Eisenbach was

11

arrested, and falsely told Officer Hernandez that he did not live there, that fact had no bearing on Eisenbach's guilt, or the manner in which it was proven at trial. As such, counsel's performance vis-a-vis Eisenbach's passenger was not unreasonable, and there is no reasonable likelihood that the complained of information about the passenger, if offered into evidence, would have affected the outcome of the trial. Under the doubly deferential standard for review of ineffectiveness claims under § 2254(d), no relief is available on Eisenbach's claim that counsel was ineffective for failing to investigate and offer evidence about the passenger's residence.

With respect to Eisenbach's claim that the booking records would have revealed that he was not wearing a coat and would have undercut the prosecution's evidence that drugs were found on him in his coat, that claim, as found by the state trial court, is not supported by any record evidence. In particular, there is no evidence that the booking record would have been favorable to him or his contention that he wasn't wearing a coat at the time of his arrest and/or at the time of his booking. Although the state trial court determined that a photograph showed Eisenbach *wearing* a coat, it cannot be ascertained from that copy of the photograph in the record, *see Ex Parte Eisenbach*, Application No. WR-87,169-01, at 31, whether Eisenbach was wearing a coat or not. But that uncertainty in the record is of little consequence, because the state trial court determined that Eisenbach had not proven that a booking record photograph would have been favorable to his defense. Upon this record, that rejection of Eisenbach's ineffectiveness claim is not based on an *unreasonable* determination of the facts in light of the evidence presented in the state habeas proceeding. Consequently, under § 2254(d), no relief is available to Eisenbach on that ineffectiveness claim.

## VI. Conclusion and Recommendation

Based on the foregoing and the conclusion that no relief is available to Eisenbach on the merits of any of his claims, the Magistrate Judge

RECOMMENDS that Respondent's Motion for Summary Judgment (Document No. 11) be GRANTED, and that Petitioner Raymond Louis Eisenbach's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED and DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 29th day of March, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE